UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    BARRETT HOLLOWAY MOORE,
        Debtor.
_____/

BRAD THOR,
       Plaintiff,

v.

BARRETT HOLLOWAY MOORE,
       Defendant.
_____/

Case No. 17-20106-dob
Chapter 7 Proceeding
Hon. Daniel S. Opperman

Adversary Proceeding
Case No. 17-02039-dob

## OPINION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Before the Court is Defendant Barrett Moore's Motion for Summary Judgment. Plaintiff Brad Thor filed this Adversary Proceeding under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6) objecting to the dischargeability of debt owed to him by Defendant. The Court heard oral argument on this matter and, at the request of counsel for both Plaintiff and Defendant, granted the opportunity for supplemental briefing. As confirmed at a status conference held on March 21, 2023, the record is now complete for the Court to rule on this Motion. For the reasons stated in this Opinion, the Court denies Defendant's Motion for Summary Judgment.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts).

1

Facts

On January 24, 2017, Debtor Defendant filed this Chapter 7 bankruptcy case. Starting in 2007, Defendant, individually and through certain entities – including McMichael Road, LLC ("McMichael"), Bearing360, LLC ("Bearing360"), and Sovereign Deed, a now-defunct private "disaster response" firm solicited individuals to sell "safe haven" facilities and supplies. Plaintiff was one such consumer of these facilities and supplies. Between September 2009 and March 2010, Plaintiff paid Defendant $100,000.00 for Plaintiff and his family to have access to a purported "safe haven" facility which Defendant or McMichael Road LLC owned (the "Safe Haven Facility"). The Safe Haven Facility was located at 1566 McMichael Road, Burt Lake, Michigan. Defendant offered Plaintiff and his family lifetime access to the Safe Haven Facility. Certain personal property was entrusted by Plaintiff to Defendant to be held at the Safe Haven Facility. Plaintiff also gave Defendant $175,000 for pallets of dehydrated food and masks to be stored at or near the Safe Haven Facility as represented by Defendant to Plaintiff. Further, certain "survival gear" worth "well over" $40,000.00 according to Plaintiff was shipped to be stored at the Safe Haven Facility, all of which was not returned to Plaintiff.

In the fall of 2012, Plaintiff alleges that he entrusted 10 one-ounce gold maple-leaf coins, valued at more than $17,000.00, to Defendant's and McMichael Road LLC's possession for safekeeping for Plaintiff's use during an emergency or disaster event. In mid-April 2013, Defendant solicited Plaintiff to purchase 30 one-ounce gold maple-leaf coins, purportedly to help "make ends meet." Plaintiff agreed to purchase 15 of the 30 coins offered for $21,225.00, and, at Defendant's direction, Plaintiff wire transferred the funds to Bearing360's account at Awakon Federal Credit Union. Plaintiff alleges that upon receipt of Plaintiff's funds in Bearing360's account, Defendant promptly transferred $20,000.00 to another entity he controlled, Great

Northern Services, LLC, without informing Plaintiff. Defendant suggested to Plaintiff that Defendant should store the purchased coins with the other coins Plaintiff had entrusted to Defendant. Defendant represented to Plaintiff that he placed Plaintiff's original 10 gold coins and the purchased 15 gold coins (the "Gold Coins") in one of seven hidden safes within Defendant's home and at the Safe Haven Facility, in safekeeping for Plaintiff. On August 3, 2013, Plaintiff alleges that Defendant informed him that the Gold Coins Plaintiff entrusted to Defendant and McMichael for safekeeping were "missing."

On May 3, 2013, Plaintiff alleges Defendant solicited Plaintiff for $35,000.00 for what Plaintiff describes as the "LARC Transaction", specifically to invest in the purchase and resale of a LARC amphibious vehicle from government surplus, pending receipt of expected funds from another investor, John M. Templeton. Specifically, Defendant stated that Plaintiff would be paid the $35,000.00 plus a $10,000.00 premium within 2 weeks, with the agreement that the LARC would not be moved anywhere until Plaintiff was paid. Plaintiff asserts that Defendant represented that "both the buy side and sell side of the transaction are nailed down, with a nice guaranteed return built in." So, on May 3, 2013, Plaintiff wired to Defendant – through Bearing360 – $35,000.00 in reliance on Defendant's representations of the need for the funds for the express purpose of acquiring the LARC for resale. On April 27, 2015, in sworn answers to interrogatories filed in the Cheboygan County Circuit Court,[1] Defendant admitted that "Bearing360 purchased the LARC . . . and Thor's dollars arrived after the fact." Despite this change in the transaction, Defendant never returned Plaintiff's initial investment or the promised premium. Long after the 2 weeks passed, when Plaintiff inquired whether Templeton's funds had come in, Defendant denied receiving anything, despite Defendant and Bearing360 having received over $500,000.00 from

---

[1] This action is described later in this Opinion.

Templeton. To date, Defendant has made no payment of Plaintiff's principal investment of $35,000.00 or the $10,000.00 premium promised, despite the LARC Transaction's terms, Defendant's representations, and Defendant's subsequent sale of the LARC.

On or about July 31, 2014, Plaintiff commenced a lawsuit in the Cheboygan County Circuit Court against Defendant and McMichael Road, LLC by filing a multi-count complaint against Defendant and McMichael ("Circuit Court Case"). On or about December 8, 2014, Plaintiff filed a First Amended Complaint in the Circuit Court Case alleging the following claims: (I) Statutory Conversion - Pallets; (II) Fraud - Pallets; (III) Action on Demand Note; (IV) Statutory Conversion - Survival Gear; (V) Claim and Delivery – Survival Gear; (VI) Statutory Conversion – Gold Coins; (VII) Claim and Delivery – Gold Coins; (VIII) Fraud – Gold Coins; (IX) Breach of Fiduciary Duty; (X) Fraudulent Misrepresentation – LARC Loan; (XI) Breach of Contract – LARC Loan; (XII) Breach of Contract – Facility Membership; (XIII) Unjust Enrichment.

On March 30, 2016, a Stipulated Judgment was entered by the Circuit Court in the amount of $350,000 in favor of Plaintiff and against Defendant upon the Defendant's offer of judgment.

The instant Adversary Proceeding was commenced by Plaintiff asserting that Defendant obtained certain property through misrepresentations and "silent fraud" under Section 523(a)(2). The property at issue consists of: pallets of dehydrated food and surgical masks; gold coins totaling $38,225.00; funds totaling $175,000.00; lifetime use of the Safe Haven Facility totaling $100,000; and $45,000.00 for funds given and a premium promised for a LARC amphibious vehicle. Specifically, Plaintiff asserts that during the period in which Defendant made these misrepresentations to Plaintiff, McMichael Road LLC and Defendant were in default under the terms of certain loans with Citizens National Bank, which were secured by the property on which the Safe Haven Facility was located and by the personal guaranty of Defendant. They were behind

on mortgage payments totaling $229,980.76, and they failed to pay property taxes for 2007-2009, totaling $127,812.33. Despite Defendant's representations that Plaintiff and his family would have lifetime access to the Safe Haven Facility, Defendant and McMichael were in serious jeopardy of losing the Safe Haven Facility property to foreclosure.

Plaintiff also alleges counts under Section 523(a)(4), asserting that Defendant committed fraud/defalcation while acting in a fiduciary capacity and/or embezzled the gold coins, the pallets and the survival gear. The Section 523(a)(4) Count does not include the Safe Haven Facility funds or the LARC transaction—these are only alleged under Section 523(a)(2). Finally, Plaintiff asserts a count under Section 523(a)(6) that Defendant's actions constitute willful and malicious conduct, as to again limited to the gold coins, the pallets and the survival gear, not the Safe Haven Facility funds or the LARC transaction.

Defendant filed the instant Motion for Summary Judgment, asserting he is entitled to judgment as a matter of law as there are no genuine issues of fact for a finding of nondischargeability under all three of these subsections of Section 523(a). First, Defendant argues that the amount of any judgment should be capped at the $350,000 in the Stipulated State Court Judgment.

Second, that he is entitled to summary judgment as to the Section 523(a)(2) count because failure to disclose facts or "silent fraud" as to one's financial condition is not actionable under this subsection.

Third, Defendant asserts that judicial estoppel precludes Plaintiff from pursuing any relief regarding the pallets because Plaintiff has taken inconsistent positions in the state court (an unsecured loan due on demand as admitted by Defendant there by way of the consent judgment and previously by a summary disposition ruling in Plaintiff's favor that it was an unsecured loan),

5

and in this case that it was for the purchase of goods through a bill of sale. Arguing here that it was a sale of goods opens the door for a Section 523(a)(4) and/or (a)(6) count, and Plaintiff should be precluded from doing so here.

Fourth, Plaintiff should also be precluded from a Section 523(a)(2) action (Count I) for the pallets as such was a $175,000 loan, not the sale of goods as was pled in the state court and relied upon in the state court consent judgment. In any event, Defendant argues that the damages under Section 523(a)(2) for the pallets would be limited to $175,000.

Fifth, Defendant argues that the Safe Haven Facility $100,000 amount is not supported by the facts and there is no genuine issue of such. At most, Plaintiff's maximum damages should be capped at $100,000 for this. Along with the $175,000 cap for pallets, this leaves $75,000 remaining for all other counts.

Sixth, Plaintiff should be determined to have been a financer of the LARC transaction, not a purchaser. Thus, summary judgment is appropriate as to Defendant regarding this transaction because there is no debt owing to Plaintiff and thus no nondischargeability determination.

Seventh, summary judgment is appropriate as to Count I as such is supported by Plaintiff's allegations that he relied upon Defendant's representations as to his military service. At a minimum, Plaintiff should be precluded from relying upon such as a basis under Section 523(a)(2).

Plaintiff denies these allegations of fact and law asserted by Defendant, argues all counts are replete with genuine issues of fact and asks that Defendant's Motion be denied.

The purpose of the supplemental briefing allowed by the Court at the conclusion of the initial hearing on this Summary Judgment Motion was for the parties to address whether or not the United States Supreme Court case of *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752

(2018), as applied to the facts of this case, warrant granting Defendant's Motion for Summary Judgment.

## Law

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met is burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

### Judicial Estoppel

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217-18 (6th Cir. 1990) (citation omitted). "Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth

of either statement." *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004), *quoted in White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).

"In order to invoke judicial estoppel a party must show [i] that the opponent took a contrary position under oath in a prior proceeding and [ii] that the prior position was accepted by the court." *Teledyne Indus.*, 911 F.2d at 1218; *see also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). A third factor courts have examined is whether the "'conduct amount[s] to nothing more than mistake or inadvertence.'" *White,* 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776).

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.
>
> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.
>
> . . . [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (internal quotation marks and citations omitted); *see also Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 624 (6th Cir. 2005) (relying on *New Hampshire v. Maine* and noting that "the second factor-that a court accepted the party's initial position-appears to be significant").

The Sixth Circuit Court of Appeals has examined the following circumstances in determining whether the conduct was the result of mistake or inadvertence, which may result in the application of judicial estoppel being inappropriate: (1) "the debtor lacks knowledge of the factual basis of the undisclosed claims"; (2) "the debtor has no motive for concealment"; and (3) "the absence of bad faith." *White*, 617 F.3d at 476 (citing *Browning*, 283 F.3d at 776).

### Section 523(a)(2)(A)

Section 523(a)(2)(A) provides:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –

(2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

(1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

---

[1] The term "property" as used in section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *Gleason v. Thaw,* 236 U.S. 558, 561 (1915).

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *XL/Datacomp, Inc. V. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

Intent, under *Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (B.A.P. 10th Cir. 2000) (citations omitted)). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *Comm. Bank & Trust Co. v. McCoy (In re McCoy),* 269 B.R. 193, 199 (Bankr. W.D. Tenn. 2001).

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003):

Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

Section 523(a)(2)(A) contains the phrase "respecting the debtor's or an insider's financial condition." Under *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018), the United States Supreme Court settled a divided issue as to the scope of this phrase, adopting a broader construction of it. The *Lamar* Court held that a statement is "respecting" a debtor's financial condition if "it has a direct relation to or impact on the debtor's overall financial status" and that "[a] single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not." *Id*. at 1761.

### Section 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
>    (a) in the form of an express trust or
>    (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and
> (3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied

trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

### Defalcation

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 273-74 (internal quotation marks and citation omitted).

After the plaintiff establishes a breach of the fiduciary duty, "the plaintiff must demonstrate a loss resulting from the breach." *Sangal v. Strickfaden (In re Strickfaden)*, No. 09-

CV-15060, 2010 WL 3583427, at *4 (E.D. Mich. Sept. 9, 2010) (noting there is no defalcation if the funds were spent completing the project or toward contract-related bills).

### Embezzlement and Larceny

"[F]or Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these terms." *Williams v. Noblit (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005). The burden is upon the plaintiff to demonstrate the debt is nondischargeable by a preponderance of the evidence. *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 852 (6th Cir. 1993).

"Federal common law defines embezzlement as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Noblit*, 327 B.R. at 311 (quoting *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir.1996)).

"An essential element of the crime [of embezzlement] is a felonious or fraudulent intent." *People v. Douglass*, 293 Mich. 388, 391, 292 N.W. 341 (1940) (citation omitted). "[T]he requisite intent to defraud must exist at the time of conversion or appropriation of the property to defendant's own use" *People v. Artman*, 218 Mich. App. 236, 241, 553 N.W.2d 673 (1996). "The mere failure to pay over moneys belonging to another, without a felonious intent, is not embezzlement." *Douglass*, 293 Mich. at 391; *Artman,* 218 Mich. App. 241-42. "[C]oncealment or its absence, [or] refusal to pay . . . on demand . . . are not to be taken as declared essentials of the offense or defense but merely as circumstances bearing on the intent." *American Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 261 Mich. 221, 224-25, 246 N.W. 71 (1933). "If property is converted without concealment, and under a bona fide claim of right, the conversion is not embezzlement, however unfounded the claim may be." *Douglass,* 293 Mich. at 391.

13

> Larceny is different [from embezzlement] in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner."

*Noblit*, 327 B.R. at 311 (quoting *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003)).

### Section 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The United States Supreme Court has stated that a willful and malicious injury occurs only if "the actor intend[ed] 'the consequences of [the] act,' not simply 'the act itself'" and has held that debts arising from negligent or reckless conduct do not fall within the statutory exception. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 64 (1998) (quoting Restatement (Second) of Torts § 8A cmt. a (1964)); *see also Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 581 (6th Cir. 2001) ("only acts done with the intent to cause injury - and not merely acts done intentionally - rise to the level of willful and malicious injury") (citing *Geiger*, 523 U.S. at 61). In the Sixth Circuit Court of Appeals, the standard for determining whether the actor intended to cause the injury for purposes of § 523(a)(6) is whether the actor 1) desired to cause the consequences of his or her act, or 2) believed that the consequences are substantially certain to result from the act. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

A willful and malicious injury "can be inferred through the circumstances surrounding the injury at issue."*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted). However, the discharge exceptions are to be construed narrowly and in favor of the debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999)). "The party

seeking the exception to discharge bears the burden of proof by a preponderance of the evidence." *Id.* at 306 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

Analysis and Conclusion

Here, genuine issues of material fact exist as to essential elements of this action. First, under Section 523(a)(2)(A), regarding the Safe Haven Facility use and all items of property, Plaintiff alleges that Defendant made misrepresentations or engaged in "silent fraud" with the intent to deceive. Issues of fact exist as to whether misrepresentations were made whether directly or through "silent fraud." Further, Section 523(a)(2)(A) requires a subjective determination of Defendant's intent at the relevant times, which is not appropriate for summary judgment based upon this record.

Even under the broader interpretation the term "financial condition" of the debtor under *Lamar*, the facts alleged by Plaintiff and the responsive facts alleged by Defendant are genuine issues of material fact as to Defendant's financial condition. An example of a fact alleged by Plaintiff respecting Defendant's financial condition is whether Defendant was behind on his mortgage payments owing on the Safe Haven Facility at the time Defendant was making representations to Plaintiff regarding the sale of access to such (Plaintiff's Amended Complaint, ¶¶12-13, Docket No. 4). Defendant's financial condition during this time is disputed and the Court must hear evidence to determine this, as well as the other elements under Section 523(a)(2)(A) as to Defendant's subjective intent.

Defendant may be correct that *Lamar* completely controls in that the complained of statements or acts of Defendant only regard Defendant's financial condition and were not in writing. On the other hand, Plaintiff may be correct that he was separated from his money, property or services by false pretenses, a false representation, or actual fraud other than a statement

respecting his financial condition. In *Lamar*, the bankruptcy court held a trial; in this case, Defendant seeks relief by way of Motion. This record is not sufficient or complete to allow this Court to make a decision at this time.

Applying *Lamar* to determine that no genuine issue of material fact exists at the summary judgment stage is premature. Instead, this Court is required to apply the Supreme Court's decision in *Lamar* to the facts of this case after a trial upon the introduction of evidence and testimony and the Court weighing the credibility of such. Moreover, the Court notes that Plaintiff's Amended Complaint only alleges a Section 523(a)(2)(A) action and not a Section 523(a)(2)(B) action. Unless the evidence at trial differs from Plaintiff's instant action, *Lamar* may not govern.

Second, under Section 523(a)(4), a genuine issue of fact exists as to whether the requisite fiduciary relationship in the form of an express trust or technical trust relationship existed. Plaintiff alleged such existed in his Complaint, and while Defendant disputes this allegation, such is an issue of fact which the Court cannot rule on as a matter of law based upon this record. The same is true for the existence of a defalcation. Plaintiff alleged in his Amended Complaint, "the circumstances surrounding the 'disappearance' of the Gold Coins, Survival Gear, and Pallets clearly indicate fraud or defalcation while acting in a fiduciary capacity and embezzlement." (Amended Complaint, Doc. 4, ¶98). These "circumstances" are factual determinations to be made, which cannot be decided as a matter of law.

Third, under Section 523(a)(6), Plaintiffs assert that Defendant converted the survival gear, pallets and gold coins and did so with the specific intent to injure Plaintiff by depriving him of these items. Again, Defendant disputes Plaintiff's allegations in this regard. This determination would be made by ascertaining Defendant's state of mind at the relevant time and whether Defendant desired to cause the consequences of his actions, actions, which Defendant disputes, or

16

17-02039-dob    Doc 116    Filed 04/27/23    Entered 04/27/23 15:26:20    Page 16 of 18

whether Defendant believed that the consequences were substantially certain to result from these disputed actions.

The Court notes that Defendant also makes an argument sounding in collateral estoppel when he argues the Stipulated Judgment is a bar to Plaintiff claiming damages in this adversary proceeding that exceed $350,000. Michigan courts have generally held that consent judgments are not to be given collateral estoppel effect. *See Goldman v. Wexler*, 122 Mich. App. 744,748-49, 333 N.W.2d 121 (1983) (citing *American Mutual Liability Ins. Co. v. Michigan Mutual Liability Co.*, 64 Mich. App. 315, 326-27, 235 N.W.2d 769 (1975)). This general rule does have an exception, however. If the parties have entered into an agreement expressly "'manifesting an intention that the judgment be conclusive with respect to one or more of the issues,'" the consent judgment may be given collateral estoppel effect as to those issues. *Baumhaft*, 271 B.R. at 526 (quoting *Mustaine v. Kennedy (In re Kennedy)*, 243 B.R. 1, 12 (Bankr. W.D. Ky. 1997) (citation omitted)). An issue of fact exists as to whether this exception applies because Defendant did not address this exception to the consent judgment general rule.

Defendant's judicial estoppel argument raises issues of fact. Defendant's assertion that Plaintiff has taken inconsistent positions in the state court (unsecured loan) versus here (sale of goods) to better support Plaintiff's Section 523(a)(4) and/or (a)(6) Counts has an explanation—the standards for the state court action and the nondischargeability action are different. In any event, issues of fact exist if Defendant continues to assert a judicial estoppel argument.

Defendant's Motion for Summary Judgment is DENIED because fact issues exist for the reasons above stated. The Court will prepare an order consistent with this Opinion.

**Not for Publication**

17

17-02039-dob    Doc 116    Filed 04/27/23    Entered 04/27/23 15:26:20    Page 17 of 18

**Signed on April 27, 2023**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge